**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| Michael Hallett, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. _____ |
| ) | |
| Nationstar Mortgage, LLC, and ) | |
| ) | |
| Federal National Mortgage Association ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is brought by Michael Hallett against Defendants Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Nationstar") and Federal National Mortgage Association ("Fannie Mae") for blatantly ignoring a state court judgment in Mr. Hallett's favor and all subsequent efforts to fix the issue. Fannie Mae sought to foreclose on Mr. Hallett's home in 2017 and lost its case. The Maine Superior Court ordered judgment in Mr. Hallett's favor in May 2018 based in part on Nationstar's failure to credit Mr. Hallett with payments he made during "good faith" efforts to comply with a loan modification process the Court characterized as full of "unreasonable technical requirements." According to Maine law, Mr. Hallett has no further obligation to pay the loan, and Fannie Mae and its servicer, Nationstar, have no right to foreclose or otherwise attempt to collect on the loan. The note and mortgage are unenforceable and Mr. Hallett holds title to his property free and clear of the mortgage.

Flagrantly ignoring the court order, Fannie Mae and Nationstar have persisted in their attempts to collect the loan balance, have charged new fees to the account, have trespassed on

Mr. Hallett's property allegedly to do foreclosure-related property inspections, have reported this non-existent debt to the credit bureaus and verified that inaccurate reporting upon dispute and have failed to discharge their unenforceable mortgage. Nationstar has also continued to review Mr. Hallett's credit report despite having no permissible purpose to do so.

Mr. Hallett now seeks relief from Nationstar for violations of the Maine Unfair Trade Practices Act ("UTPA"), 5 M.R.S. §205-A *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §2506, 12 C.F.R. §§1024.35 & .36, the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, the Maine Consumer Credit Code, 9-A M.R.S.A. §§9-403 and 9-307, and seeks a Declaratory Judgment against Nationstar and Fannie Mae pursuant to 28 U.S.C. §2201 declaring that the mortgage and note are unenforceable and Mr. Hallett holds title to the property free and clear.

## JURISDICTION AND VENUE

1. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§1331 and 1367.

2. Venue is proper here pursuant to 28 U.S.C. §1391, as the Plaintiff is a resident of Penobscot County, Maine, all relevant events giving rise to the Plaintiff's claims occurred in this District, and Defendants were doing business in Maine during all relevant times.

## PARTIES

3. Plaintiff Michael Hallett is a natural person residing in Howland, Maine.

4. Nationstar is a limited liability company with a principal place of business in Texas.

5. Nationstar does business as Mr. Cooper.

6. Nationstar d/b/a Mr. Cooper is a loan servicer and services Mr. Hallett's loan for Fannie Mae.

7.     At all times relevant to this action, Nationstar was a furnisher of consumer information to consumer reporting agencies, and furnished information relating to Plaintiff.

8.     Defendant Fannie Mae is a Government Sponsored Enterprise ("GSE") and a publicly traded, federally chartered corporation with its headquarters in Washington, D.C.

9.     Fannie Mae is the owner of Mr. Hallett's loan.

## FACTS

10.    Fannie Mae is the holder of a promissory note and first-lien mortgage on Mr. Hallett's home at 14 Pleasant Street, in Howland, Maine (the "Property").

11.    Mr. Hallett has been the owner of the Property since January 27, 2008. Initially he owned the house with his ex-wife, Rebecca York, but he was given the house in their 2011 divorce.

12.    The Property has always been and remains Mr. Hallett's primary residence. For the past four years he has been living there with his second wife, Leanne Hallett.

13.    In 2017, Fannie Mae filed a complaint for foreclosure against Mr. Hallett and his ex-wife in the Penobscot Superior Court, *Federal National Mortgage Associate v. Hallett*, Maine Superior Court, Penobscot, Docket No. RE-17-070 ("Foreclosure Action"). In the Foreclosure Action Fannie Mae sought a judgment of foreclosure and judgment on the note secured by the mortgage. A true and accurate copy of the complaint in the Foreclosure Action is attached as Exhibit A.

14.    A trial was held and Fannie Mae lost the case. During the trial Mr. Hallett argued that Nationstar had been incompetent in processing loan modifications and had failed to credit certain payments he made. On May 21, 2018, Justice William Anderson of the Superior Court ordered Judgment in the Halletts' favor (the "Judgment"). The Judge found that Mr. Hallett had "been

attempting to jump through the loan modification hoops for months and had made payment after payment in good faith in his attempt to achieve a modification" but that Nationstar had made "unreasonable technical requirements. . . that created an insurmountable barrier to successful completion." A true and accurate copy of the Judgment is attached as Exhibit B.

15. Fannie Mae appealed the Judgment but the appeal was voluntarily dismissed. The May 21, 2018 Judgment is a final judgment.

16. In post-trial orders, Justice Anderson found, among other things, that "[s]ignificant issues arose at trial concerning the servicer's incompetence in processing loan modifications and concerning its failure to credit payments actually made…" True and accurate copies of the June 29, 2018 and January 11, 2019 post-trial orders are attached as Exhibit C.

17. As a result of the Judgment, Mr. Hallett has no further obligation with respect to the note or mortgage, Fannie Mae no longer has any enforceable interest in the note or in the property set up as security for the note, and Mr. Hallett has no further obligation to make payments on the note.

18. The note and mortgage are unenforceable and Mr. Hallett holds title to the property free and clear of the mortgage.

19. In *Pushard v. Bank of America*, 2017 ME 230, the Maine Supreme Judicial Court found that, when a plaintiff fails to prove its foreclosure case, it no longer has any enforceable interest in the note or in the property set up as security for the note, and the defendants have no further obligation to make payments on the note.

20. As servicer for Fannie Mae, Nationstar had knowledge of the Judgment.

21. Despite the Judgment, Fannie Mae and Nationstar have continued to try to collect the loan.

22. Since May 21, 2018, Nationstar has sent Mr. Hallett at least eleven notices regarding the loan and has alleged an escalating balance of up to more than $26,000 to reinstate the loan. A true and accurate copy of the December 18, 2018 statement from Nationstar is attached as Exhibit D.

23. Nationstar has alleged that Mr. Hallett owes new fees incurred after the date of the Foreclosure Judgment including for default notice filing, legal fees and property inspection fees.

24. The mortgage remains of record in the Penobscot County Registry of Deeds and has not been discharged.

25. Neither Nationstar nor Fannie Mae have provided Mr. Hallett with written evidence acknowledging that all his obligations regarding the mortgage have been fulfilled.

26. Nationstar is also reporting a past due balance on Mr. Hallett's credit report which is inaccurate.

27. Mr. Hallett's credit reports from Equifax, Experian and Trans Union all show the account reported as past due with an escalating past due balance of over $20,000. True and accurate copies of the relevant portions of Mr. Hallett's credit reports are attached as Exhibit E.

28. This reporting is inaccurate because Mr. Hallett does not owe anything further on the account after the Judgment.

29. In May 2019, Mr. Hallett disputed the erroneous Nationstar information pursuant to the FCRA to Experian, Equifax and Trans Union by certified mail, return receipt requested. He provided a copy of the Judgment and sent a copy of the dispute to Nationstar.

30. Experian, Equifax and Trans Union forwarded the dispute to Nationstar pursuant to FCRA procedures.

31. On June 24, 2019 Equifax wrote to Mr. Hallett stating that Nationstar had updated the balance on the account to $22,760 but failed to correct the reporting.

32. On June 25, 2019 Experian wrote to Mr. Hallett stating that Nationstar had updated the balance on the account to $22,760 but failed to correct the reporting.

33. On June 25, 2019 Trans Union wrote to Mr. Hallett stating that Nationstar had updated the balance on the account to $22,760 and verified the reporting as accurate.

34. Upon learning that Nationstar had verified the inaccurate information despite having been repeatedly notified of the Foreclosure Judgment, Mr. Hallett felt frustrated, angry and hopeless. He felt that he and Leanne would never be able to get this problem solved so that they could move on with their lives.

35. Nationstar has pulled Mr. Hallett's credit report after the May 2018 Judgment despite having no permissible purpose to do so now that there is a court order in place stating that Mr. Hallett owes no debt.

36. On April 5, 2019 Nationstar reviewed Mr. Hallett's Trans Union credit report for the stated purpose of an account review and may have reviewed it on other occasions.

37. Since Mr. Hallett's account had been extinguished by the Judgment, there was no permissible purpose for this review.

38. Reviewing Mr. Hallett's credit report without a permissible purpose violated his privacy.

39. Nationstar, on behalf of Fannie Mae, sent people to Mr. Hallett's house at least three times since November 2018 to survey the property and take photographs.

40. In November 2018 Mr. Hallett saw someone taking photographs of his property in a car in his driveway. When he started walking toward the car, they drove away. In March 2019 Leanne Hallett was home alone when someone came to her door and asked to take pictures of

her back yard for Fannie Mae saying they were preparing to sell the property. Mrs. Hallett was extremely upset and distraught. After he left she called her husband at work in tears.

41. Mr. Hallett was extremely upset by his wife's distress, invasion of his privacy and by the fact that people were coming onto his property and had to stop what he was doing at work in order to calm down and do his job safely.

42. On April 10, 2019 Mrs. Hallett observed a parked car in front of her house with an occupant who appeared to be taking photos of the house. She told her husband about this incident and they were both extremely upset.

43. Mr. and Mrs. Hallett have continued to be upset about these visits and are consistently on edge worrying that someone else will show up to bother them again.

44. On March 6, 2019, Mr. Hallett delivered a Qualified Written Request ("QWR"), Request for Information (RFI) and Notice of Error (NOE) pursuant to 12 U.S.C. §2605 and 12 C.F.R. §§1024.35 & .36 to Nationstar highlighting these errors. A true and accurate copy of the letter, along with supporting documents and proof of delivery and receipt, is attached hereto as Exhibit F.

45. The March 6, 2019 letter included Mr. Hallett's name, address and the loan number. The letter was delivered to an address designated by Nationstar for receiving QWRs.

46. Nationstar never provided a response.

47. On March 6, 2019, Mr. Hallett delivered a demand letter pursuant to 5 M.R.S.A. §213 to Nationstar outlining the above unfair and deceptive acts. A true and accurate copy of the March 6, 2019 demand letter, along with supporting documents and proof of delivery and receipt is attached as Exhibit G.

48. Nationstar never provided a response.

49. Mr. Hallett paid certified mailing costs to send these two letters to Nationstar.

50. Mr. Hallett paid attorneys' fees to send a second QWR/NOE to Nationstar through counsel on May 13, 2019.  A true and accurate copy of the May 13, 2019 letter, along with supporting documents and proof of delivery and receipt is attached as Exhibit H.

51. Nationstar never provided a response.

52. Upon information and belief, Nationstar does not have adequate policies and procedures to address the type of issue that arose in this matter.

53. Upon information and belief, Nationstar has engaged in a pattern and practice of failing to properly investigate and correct errors asserted by customers in this case and other cases nationwide. *See, e.g.*, allegations in: *Chad and Michelle Dionne v. Nationstar Mortgage, LLC*, United States District Court, District of Maine, Case No. 2:17-cv-00184-NT (filed 05/23/2017); *The Bank of New York Mellon as Trustee et al v. David and Leanne Pooler*, Maine District Court, Dover-Foxcroft, No. RE-15-19 (First Amended Answer with counterclaims filed 7/28/2016); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1245 (11th Cir. 2016); *Hall v. Nationstar Mortgage LLC*, 2016 WL 3971428, at *6 (N.D. Ala. July 25, 2016); *Robinson v. Nationstar Mortgage*, 2015 WL 13651767, at *9 (C.D. Cal. Apr. 16, 2015); *Gray v. Nationstar Mortg., LLC*, 2012 WL 359764, at *4 (E.D. Mich. Feb. 2, 2012); *Ponds v. Nationstar Mortgage, LLC*, 2016 WL 3360675, at *5–6 (C.D. Cal. June 3, 2016).

54. Nationstar does not maintain adequate policies and procedures to ensure compliance with the FCRA, as evidenced by the conduct alleged herein.

55. Nationstar has engaged in a pattern and practice of noncompliance with the FCRA particularly the conduct alleged herein.

56. After the foreclosure Judgment, Mr. Hallett was very relieved and thought he and Leanne could finally put the stress of the mismanaged loan modification process behind them. He waited for Nationstar to send him a discharge of the mortgage. When it never came and Nationstar continued to attempt to collect on the loan, kept reporting it on his credit report and sent people to survey his property he felt extremely frustrated and anxious. He felt that the situation with Nationstar was taking over his life and becoming the only thing that he and his new wife could talk about. They bickered more often. He experienced sleeplessness, weight gain and an increase in his blood pressure and had trouble concentrating at work. He became much more irritable and moody and shut himself off from social connections. He and Leanne have also had to hold off on their plans to sell the house so they could have a clean slate and move on with their lives in a new town.

## CLAIMS

### COUNT ONE:  VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### 12 U.S.C. §2605
### (Nationstar)

57. The Plaintiff repeats and realleges and incorporates by reference the paragraphs above as if fully set out herein.

58. On March 6, 2019, Mr. Hallett delivered a QWR/NOE/RFI pursuant to 12 U.S.C. §2605 and 12 C.F.R. §§1024.35 & .36 to Nationstar at its designated address. The letter contained Mr. Hallett's name and account number and a statement of the reasons he believed the account was in error, including a copy of the Judgment. *See* Exhibit F.

59. Nationstar never acknowledged receipt of the QWR nor provided a response to the alleged errors.

60.     Nationstar did not properly investigate the error and failed to take steps to acknowledge and correct the error.

61.     On May 13, 2019, Mr. Hallett, through counsel, delivered a second QWR/NOE/RFI pursuant to 12 U.S.C. §2605 and 12 C.F.R. §§1024.35 & .36 to Nationstar at its designated address. The letter contained Mr. Hallett's name and account number and a statement of the reasons he believed the account was in error, including a copy of the Judgment.  *See* Exhibit H.

62.     Nationstar never acknowledged receipt of the QWR nor provided a response to the alleged errors.

63.     Nationstar did not properly investigate the error and failed to take steps to acknowledge and correct the error.

64.     Based on Nationstar's failure to conduct a proper investigation of the alleged errors and correct the errors after the first QWR was delivered, Mr. Hallett paid attorneys' fees and certified mailing costs to send another QWR in an effort to correct the error.

65.     By repeatedly failing to even respond to the alleged errors and then failing repeatedly to conduct a proper investigation and make appropriate corrections in the account Nationstar engaged in a pattern and practice of noncompliance with 12 U.S.C. §2605 and 12 C.F.R. §§1024.35 & .36.

66.     Nationstar's noncompliance caused Mr. Hallett actual damages including being held liable for a debt that had been judicially determined to be extinguished, continuing to receive collection communications and having people surveying his property and attempting to take photos of his house and yard for the ostensible purpose of pursuing a foreclosure which could never occur.  Mr. Hallett suffered sleeplessness and weight gain and his marriage suffered. Nationstar's noncompliance also caused severe emotional distress for Mr. Hallett, as described

above.  Last, because Nationstar never discharged the mortgage, Mr. Hallett has been unable to sell his home as he had planned to do and move on with his life.

67.	As such, Mr. Hallett is entitled to statutory and actual damages, including emotional distress, and attorneys' fees and costs.

### COUNT TWO:  VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT
### 5 M.R.S. §205-A *et seq.*
### (Nationstar)

68.	The Plaintiff repeats and realleges and incorporates by reference the paragraphs above as if fully set out herein.

69.	Mr. Hallett sent a demand to Nationstar pursuant to the requirements of the statute.

70.	Nationstar failed to investigate the error and made no corrections.

71.	Nationstar failed to respond to the demand.

72.	Nationstar's conduct of failing to properly investigate the error, failing to correct the error, and failing to respond to Mr. Hallett's demand was unfair and deceptive.

73.	Nationstar's violations of the Maine Consumer Credit Code constitute *per se* violations of the Maine UTPA.

74.	Nationstar's conduct was likely to mislead consumers, and did mislead Mr. Hallett to believe the judgment in the foreclosure action was meaningless.  By failing to acknowledge the import of Fannie Mae's loss in the foreclosure action, Nationstar prevented Mr. Hallett from obtaining the benefit of the judgment in his favor and prevented him from being able to sell his property as planned.

75.	As a direct result of Nationstar's unfair and deceptive conduct, Mr. Hallett was forced to pay postage expenses and attorney's fees.

76. Nationstar's noncompliance caused Mr. Hallett actual damages including being held liable for a debt that had been judicially determined to be extinguished, continuing to receive collection communications and having people surveying his property and attempting to take photos of his house and yard for the ostensible purpose of pursuing a foreclosure which could never occur.  Mr. Hallett suffered sleeplessness and weight gain and his marriage suffered.  Last, because Nationstar never discharged the mortgage, Mr. Hallett has been unable to sell his home as he had planned to do and move on with his life.

77. Further, Mr. Hallett suffered emotional distress due to Nationstar's callous conduct as described above.

78. Mr. Hallett is entitled to actual damages, including emotional distress, and attorneys' fees and costs for bringing this action.

79. Mr. Hallett further requests injunctive relief in the form of an order that Nationstar immediately file a discharge of the mortgage at issue.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### §15 U.S.C. 1681s-2(b)
### (Nationstar)

80. The Plaintiff realleges and incorporates the preceding paragraphs as if fully set out herein.

81. As set forth above, Nationstar furnished inaccurate information relating to Plaintiff to one or more consumer reporting agencies.

82. As set forth above, Plaintiff communicated on one or more occasions to Equifax, Trans Union and Experian a dispute over the accuracy of their reports relating to the Nationstar tradeline and provided the agencies with supporting documentation.

83. Each credit reporting agency notified Nationstar of Plaintiff's dispute regarding the tradeline and requested Nationstar to investigate and verify or correct the information.

84. Nationstar knew that the disputed information was inaccurate.

85. Nationstar failed to conduct a reasonable investigation and responded to the bureaus' requests for verification of the tradeline by wrongly verifying inaccurate information.

86. Nationstar willfully or, in the alternative, negligently failed to comply with the requirements of the FCRA, and, in doing so, violated Plaintiff's rights.

87. Nationstar's violation of Plaintiff's rights under the FCRA caused Plaintiff actual damages including irritability, frustration, stress, sleeplessness and other emotional distress.

88. Nationstar violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(A) and/or (B) by failing to fully and properly investigate the Plaintiff's disputes of its credit reporting after receipt of notice of such disputes from one or more credit reporting agencies and/or failing to review all relevant information provided.

89. Nationstar violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(C) by failing to accurately and completely report the results of a lawful investigation to one or more credit reporting agencies after notice of a dispute.

90. Nationstar violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(D) by failing to report results of its investigation finding the information it had been reporting regarding Plaintiff to be incomplete or inaccurate to all other consumer reporting agencies to which TD Bank reports.

91. Nationstar violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete and/or permanently block the reporting of inaccurate information regarding the Plaintiff to one or more credit reporting agencies.

92. As a result of the conduct, actions and inactions of Nationstar, the Plaintiff suffered actual damages including, without limitation, loss of the benefit of the Judgment in his favor, being held in a false light by those reviewing his credit reports with the inaccurate Nationstar information, damage to his creditworthiness and credit score, confusion, frustration, loss of sleep, weight gain and emotional distress.

93. Plaintiff has suffered a concrete injury in fact that is directly traceable to Nationstar's conduct and is likely to be redressed by a favorable decision in this action.

94. Nationstar's conduct, action and inaction were willful, rendering Nationstar liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Nationstar was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

95. The Plaintiff is entitled to recover actual damages, punitive damages, statutory damages, costs and attorney's fees from Nationstar in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n and o.

### COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
### §15 U.S.C. §1681b(f)
### (Nationstar)

96. The Plaintiff realleges and incorporates the preceding paragraphs as if fully set out herein.

97. On at least one occasion after the date of the Foreclosure Judgment, Nationstar reviewed Mr. Hallett's credit report without a permissible purpose in violation of 15 U.S.C. §1681b(f).

98. As a result of the conduct, actions and inactions of Nationstar, the Plaintiff suffered actual damages including, without limitation, a serious breach of his privacy, frustration, loss of

sleep, weight gain and emotional distress and had his most personal credit information compromised.

99. Plaintiff has suffered a concrete injury in fact that is directly traceable to Nationstar's conduct and is likely to be redressed by a favorable decision in this action.

100. Nationstar's conduct, action and inaction were willful, rendering Nationstar liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Nationstar was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

101. The Plaintiff is entitled to recover actual damages, punitive damages, statutory damages, costs and attorney's fees from Nationstar in an amount to be determined by the Court pursuant to 15 U.S.C. §§1681n and o.

### COUNT FIVE: VIOLATIONS OF THE MAINE CONSUMER CREDIT CODE
### 9-A M.R.S.A. §9-101, *et seq.*
### (Nationstar)

102. The Plaintiff realleges and incorporates the preceding paragraphs as if fully set out herein.

103. By the communications detailed above, Nationstar, in attempting to collect on the mortgage loan debt from the Plaintiff on behalf of Nationstar's principal, Fannie Mae, claimed and attempted to enforce a right that had been adjudicated as unenforceable pursuant to Judgment in the Foreclosure Action as determined by the Maine Supreme Judicial Court in *Pushard v. Bank of America*, 2017 ME 230.

104. Claiming and attempting to enforce a right barred by final Orders of Maine and federal courts is in direct violation of the Maine Consumer Credit Code, 9-A M.R.S.A. § 9-403(1)(G).

105. In violation of the Maine Consumer Credit Code, 9-A M.R.S.A. § 9-307(3), Nationstar failed to provide Mr. Hallett with written evidence that he had fulfilled all obligations with respect to the loan and mortgage within thirty days after the Judgment in the Foreclosure action, which held that Mr. Hallett had no further obligations with respect to the note or the mortgage, became final.

106. Pursuant to 9-A M.R.S.A. § 9-408, any violation of the Maine Consumer Credit Code constitutes a *per se* violation of the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§205-A *et seq*.

107. Nationstar's noncompliance caused Mr. Hallett actual damages including being held liable for a debt that had been judicially determined to be extinguished, to continue receiving collection communications and to have men trespassing in his yard for the ostensible purpose of pursuing a foreclosure which could never occur. Mr. Hallett suffered sleeplessness and weight gain and his marriage suffered. Nationstar's noncompliance also caused severe emotional distress for Mr. Hallett, as described above. Last, because Nationstar never discharged the mortgage, Mr. Hallett has been unable to sell his home as he had planned to do and move on with his life.

108. The Plaintiff is entitled to actual, including emotional distress, damages, statutory damages, costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

### COUNT SIX:  DECLARATORY JUDGMENT
**(Nationstar and Fannie Mae)**

109. The Plaintiff realleges and incorporates the preceding paragraphs as if fully set out herein.

110. Pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §2201, this Court has the authority to enter a judgment declaring that the note and mortgage at issue are unenforceable and that Michael Hallett holds title to the property free and clear of the mortgage to Fannie Mae which was the subject of the Foreclosure Action.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages; for his attorneys' fees and costs; for a declaratory judgment or other injunctive relief, for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

## REQUEST FOR JURY TRIAL

Please take notice that the Plaintiff demands a trial by jury in this matter.

Respectfully submitted

**Michael Hallett,**
By his attorneys:

/s/ James F. Molleur
James F. Molleur
Elizabeth A. Miller
(to be admitted *pro hac vice*)
Molleur Law Office
419 Alfred Street
Biddeford, ME  04005-3747
207-283-3777
jim@molleurlaw.com
elizabeth@molleurlaw.com

Date:  July 23, 2019